IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 OCT 17 PM 2: 56

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D ___ MPHS

| | |
|---|---|
| BYRON WILLIAMS, SHARON LEWIS, MICHELLE WILLETT, and AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, LOCAL 1733,<br><br>        Plaintiffs,<br><br>v.<br><br>A.C. GILLESS, MARRON HOPKINS, PAT SWAIN, and SHELBY COUNTY GOVERNMENT,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 00-3049 D V<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOCKET # 46)

---

This matter is before the Court on the motion of Defendants A. C. Gilless ("Gilless"), Marron Hopkins ("Hopkins"), Pat Swain ("Swain"), and Shelby County Government ("Shelby County") (collectively, "Defendants") for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Byron Williams ("Williams"), Sharon Lewis ("Lewis"), Michelle Willett ("Willett"), and the American Federation of State, County, and Municipal Employees ("AFSCME") Local 1733 (collectively, "Plaintiffs") allege causes of action for false imprisonment, unlawful retaliation in contravention of the First Amendment, defamation, and deprivation of a property right

This document entered on the docket sheet In compliance
with Rule 58 and/or 79(a) FRCP on _10-18-05_



in violation of the Fourteenth Amendment. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, Defendants' motion for summary judgment is **GRANTED**.

## I.      FACTUAL BACKGROUND[1]

Plaintiffs are employees of the Shelby County Sheriff's Department ("SCSD"), Jail Division. Williams is employed as a deputy jailer, but devotes his work hours to performing various union activities by serving as chapter chairperson of the AFSCME, Local 1733. Lewis is also a deputy jailer, and Willett is a sergeant.

On December 13, 1999, two arrestees filed complaints with the SCSD, alleging the use of excessive force by Lewis and Willett. After an investigation, the Internal Affairs Division sustained the charges. However, on February 15, 2000, before formal charges had been brought against Lewis and Willett, Captain W. J. Howard ("Howard") of the SCSD Internal Affairs Division sent a letter to the arrestees stating that an investigation of their complaint had been completed, their allegations were sustained, and appropriate disciplinary action had been taken in the matter.

After February 15, 2000, Lewis and Willett were formally charged. When Lewis and Willett received the charges, Williams began a union investigation and brought the February 15, 2000, letters to the attention of the union's legal counsel. Williams subsequently came to the conclusion that the letters may have civil rights implications, and discussed the matter with Hopkins, the Shelby County Chief Jailer. Hopkins then decided to postpone Lewis' and Willett's administrative hearings.

---

[1]The factual allegations are taken from the Complaint, Defendants' Motion for Summary Judgment, and Plaintiff's Response to Defendants' Motion and are presumed to be true for purposes of the instant motion only.

On March 21, 2000, Williams and a union chapter secretary were summoned to the ninth floor of the Shelby County Criminal Justice Center. When they arrived, Williams spoke to Swain, the SCSD's Administrative Officer. Williams informed Swain that the administrative hearings had been postponed due to the possibility that the February 15, 2000, letters may have civil rights implications, and that the union's legal counsel was looking into the matter. Swain then asked Williams and the union chapter secretary to accompany her into a meeting, which also included Howard and Lieutenant J. R. Holland. After Swain closed the office door, Williams alleges that Swain "demanded to know what Williams meant about civil rights violations and the involvement of an attorney and Chief Hopkins." Compl. at ¶33. When Williams indicated that he was not at liberty to discuss the issue, Swain allegedly repeated her demand. Williams then indicated that he was going to excuse himself from the meeting and attempted to leave. In response, Swain allegedly "rushed across the room and blocked/stood in front of the door and stated, 'You sit down right now and you're not leaving this room until you show me what letter or paper was sent out and what's going on!'" Compl. at ¶35. Williams alleges that when Swain made this statement, she was pointing her finger in his face. Swain told Williams that she was going to set up a meeting with Chief Deputy Don Wright and union president Willie Joe Alexander. She allegedly further stated to Williams, "'I tell you this right now, either you are going to go or I am!'" Compl. at ¶36. Williams and the chapter secretary were then permitted to leave the room.

Several weeks after the meeting, Williams was no longer permitted to work overtime as he had been in the past. Other deputy jailers were permitted to work overtime. Additionally, Williams applied for several positions but was denied those assignments.

After Lewis' and Willett's administrative hearings were conducted by Hopkins, all internal charges against Lewis and Willett were dismissed. Subsequent letters, dated March 29, 2000, corrected the errors made by the February 15, 2000 letters. On August 29, 2000, one of the arrestees filed a lawsuit, naming Lewis as one of the defendants. A copy of the February 15, 2000, letter was attached to the arrestee's complaint. Shelby County provided a defense for Lewis and later settled the lawsuit.

Plaintiffs filed their complaint on November 2, 2000. On August 22, 2003, Defendants filed the instant motion for summary judgment.

## II.    LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998).

4

Facts must be presented to the court for evaluation.  Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999).  The court may consider any material that would be admissible or usable at trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998).  Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial.  Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant.  Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

5

## III.   ANALYSIS

### A.   Defamation Claim

Plaintiffs assert that their defamation claim is actually a due process claim because they were deprived of their constitutional right to their good name without due process of law.  To the extent that Plaintiffs are suing the Defendants for defamation, Plaintiffs' interest in their reputation alone does not implicate any "liberty" or "property" interests sufficient to invoke the procedural protection of the Due Process Clause.  Paul v. Davis, 424 U.S. 693, 701 (1976).  To establish a claim under the Constitution, more must be involved than simply defamation by a state official.  Id. at 710.  The allegations of the complaint are insufficient to demonstrate violation of a protected liberty or property interest.  However, Plaintiffs appear to be seeking a remedy for defamation under state law as well, as they contend that the question of Defendants' recklessness should be one for the jury.

Defendants argue that Lewis' and Willett's defamation claims should be dismissed because the February 15, 2000 letters concerned Lewis and Willett in their capacities as deputy jailers and Plaintiffs have not demonstrated that Howard acted with malice when the letters were sent.

Defamation is a tort defined as an intentional false communication, either published or publicly spoken, that injures another's reputation or good name by holding the person up to ridicule, scorn, or contempt in a respectable and considerable part of the community.  Black's Law Dictionary, 417 (6th ed. 1990).  There are two varieties of defamation - libel and slander.  The distinction between libel and slander at common law is that libel occurs when one publishes a false and defamatory communication to a third party in writing, while slander occurs when the defamatory communication is oral.

6

The plaintiff has the burden of proof to show that "the publication was, in fact, defamatory because it tended to injure plaintiff in his trade, profession, or community standing, or lower him in the estimation of the community, or subject him to scorn, ridicule, shame, contempt, or embarrassment." Connaughton v. Harte Hanks Communications, Inc. 842 F.2d 825, 840 (6th Cir. 1988), aff'd, 491 U.S. 657 (1989). The Tennessee Court of Appeals articulated the following test to determine if a communication is defamatory:

> For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation. A libel does not occur simply because the subject of the publication finds the publication annoying, offensive, or embarrassing. The words must reasonably be construable as holding the plaintiff up to public hatred, contempt, or ridicule. They must carry with them an element of disgrace.

Stones River Motors, Inc. v. Mid-South Publishing Co., Inc., 651 S.W.2d 713, 719 (1983) (citing W. Prosser, Law of Torts § 111, p. 739 (4th Ed. 1971). Whether a communication is capable of carrying a defamatory meaning is a question of law. Pate v. Service Merchandise Co., Inc., 959 S.W.2d 569, 574 (Tenn. Ct. App. 1996).

Since the landmark case of New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the crucial factor in determining to what standard a defendant is held is whether the plaintiff is a private person or a public official or figure. If the plaintiff is a public official or public figure, the defendant must be shown to have acted with actual malice, which is a knowing or reckless disregard for the truth. Sullivan, 376 U.S. at 282. See also, Murray v. Lineberry, 69 S.W. 3d 560, 563 (Tenn. Ct. App. 2001). If the plaintiff is a private person, then she need merely prove that the defendant's actions were negligent. See Pate, 959 S.W.2d at 575. The determination of whether a plaintiff is a public official or a private person is a question of law. Ferguson v. Union City Daily Messenger,

745 S.W. 2d 162, 166-67 (Tenn. 1992) (citing Bose Corp v. Consumers Union of United States, Inc., 466 U.S. 485, 495-511 (1984)).

The Tennessee Supreme Court defines a public official as a person who "appears to the public to have substantial responsibilities for or control over the conduct of governmental affairs." Press, Inc. v. Vernan, 569 S.W.2d 435, 441 (Tenn. 1978) (citing Rosenblatt v. Baer, 383 U.S. 75, 85 (1966). More specifically, the Tennessee Supreme Court describes a public official as "any position of employment that carries with it duties and responsibilities affecting the lives, liberty, money, or property of a citizen. . . ." Press, Inc., 569 S.W.2d at 441.

Tennessee courts have ruled that, in addition to governors, mayors, and legislators, persons at much lower strata may qualify as public officials. See e.g., Roberts v.Dover, 525 F.Supp. 987, 990 (M.D. Tenn. 1981) (highway patrol officer); Selby v. Ilabaca, 1996 WL 219620, *4 (Tenn. Ct. App. 1996) (police officer); Ferguson v. Union City Daily Messenger, 745 S.W.2d 162, 167 (Tenn. 1992 ) (county purchasing agent); Junior-Spence v. Keenan, 1990 WL 17241, *4 (Tenn. Ct. App. 1990) (high school principal). The position of a person in the hierarchy of government is not decisive. Press, Inc. 569 S.W.2d at 443. However, for a plaintiff to be held to the Sullivan standard as a public official, the alleged defamation must relate to her official conduct. Roberts, 525 F.Supp. at 989-990.

At common law, defamation was a tort of strict liability. Lackland H. Bloom, Jr., Proof of Fault in Media Defamation Litigation, 38 Vand. L. Rev. 247, 249 (1985). However, since Press, Inc., Tennessee requires some degree of fault to establish liability for defamation. Press, Inc. 569 S.W.2d at 440. If the plaintiff is a public official, then the defendant's fault must be shown to the standard of actual malice, or a knowing or reckless disregard for the truth. If the plaintiff is a private

8

person, then she need merely prove that the defendant's fault was negligence. In <u>Press, Inc.</u>, the Tennessee Supreme Court adopted the standards delineated in the <u>Restatement Second of Torts</u> (1977), as the applicable standards of fault.

> § 580A.    Defamation of a Public Official or Public Figure.  One who publishes false and defamatory communication concerning a public official or public figure in regard to his conduct, fitness, or role in that capacity is subject to liability if, but only if, he
>
> (a)  knows that the statement is false and that it defames the other person, or
> (b)  acts in reckless disregard of these matters.
>
> § 580B.    Defamation of a Private Person.  One who publishes false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness, or role in his public capacity, is subject to liability if, but only if, he
>
> (a)  knows that the statement is false and that it defames the other person, or
> (b)  acts in reckless disregard of these matters, or
> (c)  acts negligently in failing to ascertain them.

569 S.W.2d at 442.

Actual malice must be established by "clear and convincing evidence" or "convincing clarity." <u>Sullivan</u>, 376 U.S. at 285-86. In defamation cases involving a public official in Tennessee, the term "actual malice" is defined as "[publishing a statement] with knowledge that it was false or with reckless disregard of whether it is false or not." <u>Press, Inc.</u>, 569 S.W.2d at 441. "Publication" means the "communication of defamatory matter to a third person." <u>Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc</u>, 876 S.W.2d 818, 821 (Tenn. 1994).

In the instant case, the alleged defamation was a written communication, not an oral one, so the Plaintiffs' claim is for libel.  Plaintiffs are public officials for the purpose of the libel claim because of their positions as deputy jailers, and the defamatory letters concern their official position,

9

rather than a purely private matter. Thus, the standard Plaintiffs must meet is higher than that for private individuals. Plaintiffs must demonstrate that Defendants acted with actual malice or reckless disregard for the truth when they sent the February 15, 2000 letters; negligence is not sufficient. "[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth. Rather, the publisher must act with a high degree of awareness of probable falsity." Gertz v. Robert Welch, Inc., 418 U.S. 323, 332 (1974) (internal quotations omitted).

Defendants contend that the secretary who typed the letters has admitted that she made a mistake. Howard has explained that he trusted the accuracy of the letters because no similar error had ever been made before. Failing to investigate is not sufficient to demonstrate actual malice. See Id. However, Defendants' actions may constitute reckless disregard for the truth if believed by the fact finder.

Accordingly, Defendants' motion for summary judgment as to Plaintiffs' constitutional claim based on defamation is granted. However, Defendants' motion as to Plaintiffs' state law defamation claim is denied, as a genuine issue of material fact exists that must be resolved by the fact finder.

**B.    False Imprisonment/Fourth Amendment Claims**

Plaintiff stated in an affidavit filed on September 17, 2004, that he "no longer wish[es] to pursue a false imprisonment claim against Pat Swain for the incident of March 21, 2000. . . ." Aff. of Byron Williams ¶ 3. Plaintiff essentially withdrew this claim, thereby mooting Defendants' motion on this point. Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiffs' false imprisonment claim, and dismisses the claim as moot.

## C.    First Amendment Retaliation Claim

Defendants assert that summary judgment should be granted as to Plaintiff's First Amendment retaliation claim because Williams' union activities were not the motivating factor that led to his being restricted from overtime work or being denied positions for which he applied. Plaintiffs assert, however, that Williams' overtime rights were taken away and he was denied the positions for which he applied specifically because of his membership and participation in the union and representation of its members.

A government employer cannot retaliate against a public employee for exercising the right to speak freely.  Graham v. City of Mentor, 118 Fed.Appx. 27, 29 (6th Cir. 2004).  For a plaintiff to establish a First Amendment retaliation claim, the plaintiff must show that 1) she was engaged in a constitutionally protected activity, 2) she was subjected to adverse action or deprived of some benefit, and 3) the protected speech or activity was a 'substantial' or 'motivating' factor in the adverse action.  Id.  See also Monks v. Marlinga, 923 F. 2d 423, 425 (6th Cir. 1991) (per curiam) (holding that this test, which the United States Supreme Court initially applied to a free speech claim in Connick v. Meyers, 461 U. S. 138 (1983), is equally applicable to First Amendment claims based on association rights).  If the employee can make this showing, the burden shifts to the employer to prove that it would have taken the same action even in the absence of the protected conduct. Graham, 118 Fed. Appx. at 29.

A plaintiff who bases a First Amendment claim on retaliation committed in response to participation in union activities pleads a claim for relief sufficient to survive a motion to dismiss. See Monks, 923 F. 2d at 425.  However, to sustain a summary judgment motion, the plaintiff who is employed by the government must satisfy a two-prong test: 1) the speech or activity involved must

be a matter of public concern or interest, and 2) the employee's interest in the speech must outweigh the employer's interest in promoting the efficiency of the public services it performs through its employees. Graham, 118 Fed. Appx. at 29-30.

In the instant case, Williams' union activities are protected by the First Amendment because they involve a matter of public concern or interest. See Monks, 923 F. 2d at 425. Williams asserts that he was subject to four adverse employment actions in retaliation for his union activities: he was forbidden to work any more overtime, he was twice denied an assignment to the Gang Task Force Unit, and he was denied a position on the Jail Shakedown Team.

Williams currently works full time performing union-related activities, and the SCSD voluntarily compensates him for a full forty-hour work week, regardless of the number of hours he works. Because Williams devotes all of his time to union-related work, he determines the number of hours and location of his work. Additionally, as chapter chairperson, he is not required to maintain any records of his work. When Don Wright learned that Plaintiff was being paid for overtime in spite of the fact that the department did not require a record of the hours Williams actually worked, Wright told Hopkins to instruct Williams to stop working overtime. This action was directly related to Williams' union activity, because other deputy jailers were permitted to work overtime. It was only because Williams was devoting his time to union activities that he was prohibited from working overtime. Similarly, Williams was denied the assignment he requested to the Jail Shakedown Team because he was not permitted to work overtime and the position required that he work overtime.

Although both the prohibition against overtime and the denial of the position as a result clearly had a direct causal connection to Williams' union activities, the Court must consider the

12

efficiency of the Shelby County Sheriff's Department. Williams was unsupervised in his work and was paid for a full forty-hour week to conduct union business. The other deputy jailers were devoting their time to deputy jailer duties and were required to record their time before they could request overtime. Defendants argue that it would have been both inefficient and fiscally irresponsible of the SCSD to pay Williams time-and-a-half to perform the deputy jailer duties that all other deputy jailers perform during the forty-hour work week. Defendants offered Williams the alternative of devoting the forty-hour work week to performing deputy jailer duties and being permitted to work overtime. Williams chose to continue to perform union duties. Thus, the fact finder must determine the true motivation for Defendants' actions and whether Williams' interest in the protected activity outweighs the SCSD's interest in promoting efficiency.

Plaintiff contends that Defendant denied him an assignment to the Gang Task Force Unit twice, in retaliation for his union involvement. He maintains that he was scrutinized more closely during the selection process than the other candidates and that equally or less qualified individuals were chosen for the positions. Williams also alleges that several SCSD officials indicated to him that he was not selected because of his involvement with the union.

Defendants argue that Plaintiff was less qualified for the position and received lower scores in the selection process than the candidates who were chosen. Thus, Defendants contend that there was no causal connection between Williams' union activities and his non-selection for the Gang Task Force Unit. The causal connection is a question of fact that will need to be resolved by the fact finder.

Defendants also assert that Plaintiff's non-selection was not an adverse action because he was able to continue in his union involvement undeterred. In order to establish that an employee has

13

suffered an adverse employment action, the plaintiff must show that "an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct." <u>Harbin-Bey v. Rutter</u>, 2005 WL 1981877, * 7 (6th Cir. 2005).  Denial of the opportunity to work overtime and the denial of promotions may constitute adverse actions.

Because the court finds that a genuine issue of fact exists, Defendants' motion for summary judgment as to Plaintiffs' First Amendment retaliation claim is **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' request to withdraw his false imprisonment claim, thereby rendering Defendants' motion for summary judgment moot. The Court **GRANTS** summary judgment as to Plaintiffs' constitutional claim based on defamation.  Because a genuine issue of fact exists, Defendants' motion for summary judgment as to Plaintiffs' state law defamation claim and Plaintiffs' First Amendment retaliation claim is **DENIED**.

**IT IS SO ORDERED** this _____ day of October, 2005

BERNICE BOUIE DONALD
UNITED STATE DISTRICT JUDGE

14

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 95 in case 2:00-CV-03049 was distributed by fax, mail, or direct printing on October 18, 2005 to the parties listed.

---

Hite McLean
LAW OFFICES OF HITE MCLEAN, JR.
2670 Union Avenue Extended
Ste. 1228
Memphis, TN 38112--441

Mark A. Allen
PROVOST UMPHREY- Memphis
White Station Tower
5050 Poplar Ave.
Ste. 700
Memphis, TN 38117

Honorable Bernice Donald
US DISTRICT COURT